**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
JO-ANN CARDONA,                                      :
                                                     :
      Plaintiff,       : Civil Action No.:  20-cv-5549
                                                     :
                                                     :
  -against-                                 : COMPLAINT
                                                     : *Jury Trial Demanded*
PRESTIGE MANAGEMENT INC., CHANTEE CADE,              :
HORACE HENRY, ARLYANE MCGLASHAN, and                 :
TREVOR A. WILSON,                                    :
                                                     :
     Defendants.            :
-----------------------------------------------------------------------X

  PLAINTIFF JO-ANN CARDONA, by her attorneys Goddard Law PLLC, whose offices are located at 39 Broadway, Suite 1540, New York, NY 10006, alleges upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

  1. Plaintiff Jo-Ann Cardona ("Plaintiff" or "Ms. Cardona") brings this action to seek redress against Defendant Prestige Management Inc., Defendant Chantee Cade, Defendant Horace Henry, Defendant Arlyane McGlashan, and Defendant Trevor A. Wilson  (collectively, "Defendants") for subjecting her to a hostile work environment because of her disability, disability discrimination, failure to provide her with a reasonable accommodation, and retaliation, in violation of the Americans with Disabilities Act of 1990 ("ADA") as amended, 42 U.S.C. § 12101 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law 290 §§ *et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*

  2. Plaintiff further brings this action pursuant to the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161, *et seq.* ("COBRA"), and Articles 6 and 7 of New York

Labor Law ("NYLL"), along with any and all other causes of action which can be reasonably inferred from the facts set forth below.

3.     Plaintiff seeks all available monetary, equitable, and any other further relief the Court may provide to remedy Defendants' unlawful conduct.

4.     Plaintiff demands a jury trial.

## JURISDICTION AND VENUE

5.     The Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.  This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendants.

6.     Venue is proper in this case pursuant to 28 U.S.C. § 1391 because a substantial part of the events which give rise to Plaintiff's claims took place in Bronx, New York, which is in the Southern District of New York.

7.     All conditions precedent to filing the instant action have been fulfilled.  On or about May 18, 2018, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the New York State Division of Human Rights.  On or around December 4, 2018, the EEOC transferred the Charge to the NYS Division of Human Rights.  On July 16, 2020, the NYS Division of Human Rights granted an administrative convenience dismissal permitting Plaintiff to pursue her discrimination claims in court.  On July 17, 2020, the EEOC issued Plaintiff a Notice of Right to Sue, and this action is being brought within 90 days of Plaintiff's receipt of her Notice of Right to Sue.

## THE PARTIES

8.      Plaintiff Jo-Ann Cardona ("Plaintiff" or "Ms. Cardona"), is a 58-year-old female, citizen of the United States who resides in the Bronx, New York.

9.      At all times relevant herein, Ms. Cardona was Defendants' "employee" as the term is defined by the ADA, NYSHRL, NYCHRL, and NYLL.

10.     At all times relevant herein, Ms. Cardona was qualified to perform the essential functions of the job she held with Defendants, with or without a reasonable accommodation.

11.     At all times relevant herein, Ms. Cardona is an individual with a "disability" as the term is defined under the ADA, NYSHRL, and NYCHRL, and/or was perceived by Defendant as an individual with disability.  Therefore, Ms. Cardona is a member of a protected class.

12.     Ms. Cardona still has and had a disability, chronic and debilitating back pain, that substantially limits one or more of her of her major life activities, including, but not limited to, her ability to walk and lift anything when she is experiencing acute and severe back pain.

13.     At all times relevant, Ms. Cardona was an "employee" and "covered employee" within the meaning of COBRA.

14.     Upon information and belief, at all times herein, Defendant Prestige Management Inc. ("Defendant Prestige Management") was and is a domestic business corporation registered in New York and permitted to do business in New York.

15.     Upon information and belief, Defendant Prestige Management's headquarters are located at 1200 Zerega Ave, Bronx, New York, 10462.

16.     Defendant Prestige Management is a large New York City-based property management company.  Defendant Prestige Management provides services to privately-owned

buildings that provide affordable housing through government-sponsored programs. One of the services Defendant Prestige Management provides is Low-Income Housing Tax Credit compliance.

17.     Defendant Prestige Management is and was, at all times relevant herein, Ms. Cardona's "employer" within the meaning of the ADA, NYSHRL, NYCHRL, NYLL, and COBRA.

18.     At all relevant times, Defendant Chantee Cade ("Defendant Cade") was and is a Senior Property Manager at Defendant Prestige Management.  In that capacity, upon information and belief, Defendant Cade was a senior level employee who controlled the conditions of employment in Defendant Prestige Management's Bronx location, including the supervision of employees and the hiring and firing of employees.  Defendant Cade also controlled the conditions of Ms. Cardona's employment with Defendant Prestige Management.

19.     Upon information and belief, Defendant Cade resides in New York.

20.     At all relevant time Defendant Horace Henry ("Defendant Henry") was and is the Executive Vice President of Defendant Prestige Management.  Defendant Henry is a senior-management level employee who controls the conditions of employment at Defendant Prestige Management, including the conditions of Ms. Cardona's employment.

21.     Upon information and belief, Defendant Henry resides in New York.

22.     At all relevant times, Defendant Arlyane McGlashan ("Defendant McGlashan") was and is the General Manager of Defendant Prestige Management and was Ms. Cardona's supervisor.  Defendant McGlashan is a senior-management level employee who controls the conditions of employment at Defendant Prestige Management, including the conditions of Ms. Cardona's employment.

4

23.     Upon information and belief, Defendant McGlashan resides in New York.

24.     At all relevant times, Defendant Trevor A. Wilson ("Defendant Wilson") was and is the President of Defendant Prestige Management.  In such capacity, Defendant Wilson controls the conditions of employment at Defendant Prestige Management, including the conditions of Ms. Cardona's employment.

25.     Upon information and belief, Defendant Wilson resides in New York.

26.     Defendant Cade, Defendant Henry, Defendant McGlashan, and Defendant Wilson were, at all times relevant herein, Ms. Cardona's "employer" within the meaning of NYSHRL, NYCHRL, and NYLL.

## FACTUAL ALLEGATIONS

### Ms. Cardona Is an Experienced, Highly Qualified Real Estate Management and Low- Income Tax Credit Compliance Professional

27.     Ms. Cardona is a 58-year-old female with approximately twenty years of professional experience in real estate management and Low-Income Housing Tax Credit compliance (hereinafter, "LIHTC"). She has a certification in LIHTC compliance and has completed multiple training courses in compliance throughout her career. Through Ms. Cardona's training and experience managing thousands of affordable housing units across numerous residential developments in New York City, she has developed deep expertise in LIHTC compliance.

28.     LIHTC compliance involves ensuring that residential properties that provide affordable housing through government-sponsored programs are in compliance with LIHTC regulations. Compliance specialists like Ms. Cardona must understand the complex regulatory scheme surrounding the tax credits and the particular rules for each individual property they manage.

29.     Ms. Cardona has worked for several leading affordable housing management organizations over the course of her career, and previously worked for Defendant Prestige Management as an Assistant Property Manager in or about mid-1999 through early 2000. In that role, she was responsible for managing an apartment building with over 250 units, including supervising the maintenance and custodial staff.

30.     In or about February 2000, Ms. Cardona left her Assistant Property Manager job with Defendant Prestige Management and accepted a Property Manager role at Bronx community development organization providing affordable housing, Mount Hope Housing Company, Inc.  In this role Ms. Cardona became a LIHTC Compliance expert, as she managed ten apartment buildings that participated in low-income tax credit programs.

31.     In or about June 2001, Ms. Cardona left Mount Hope Housing Company, Inc. to become a Property Manager at a Brooklyn community development organization, East New York Urban Youth Corps, that provides affordable housing. She remained at this job for approximately two years, during which time she managed approximately 185 units in low-income tax credit programs and gained further expertise in LIHTC.

### Defendant Prestige Management Rehires Ms. Cardona in 2003

32.     In or about mid-2003, Ms. Cardona applied for a Tax Credit Recertification Specialist position in Defendant Prestige Management's Compliance, Lease-Up, and Lease Renewal Department. This role was based in Defendant Prestige Management's Manhattan office.

33.     Ms. Cardona was excited about the possibility of returning to Defendant Prestige Management. The role involved managing LIHTC for over 2,000 apartments, which was a significant increase in responsibility over her previous job. Further, the commute to their

Manhattan office was much more convenient than traveling to East New York Urban Youth Corps' Brooklyn office.

34.    Ms. Cardona was ultimately hired by Defendant Prestige Management as a Tax Credit Recertification Specialist in or about September 13, 2003. Upon information and belief, Defendant Prestige Management hired Ms. Cardona due to her significant experience and obvious qualifications in regulatory compliance. Further, Ms. Cardona had already worked for Defendant Prestige Management, so Defendant Prestige Management was aware of her high level of competence and expertise.

35.    In the Tax Credit Recertification Specialist role, Ms. Cardona was responsible for ensuring that over 2,000 apartments were in compliance with tax credit regulations. This required Ms. Cardona to be an expert on the regulations affecting the units and certifying that tenants' incomes and household sizes were in compliance. She was responsible for vetting new tenants, managing leases, and compiling and maintaining tenant files for all the apartments.

36.    As established above, Ms. Cardona was an extremely well-qualified Tax Credit Recertification Specialist. Additionally, she was a very hard worker and organized person.  Further, she was passionate about her work helping working class people find and maintain housing.  As a result, Ms. Cardona excelled in her job.

### *Ms. Cardona Suffers Chronic, Debilitating Back Pain*

37.    In or about early 2016, Ms. Cardona developed debilitating back pain. There were many days that the pain was so acute that Ms. Cardona was unable to walk or lift anything.

38.    Plaintiff saw, and continues to see, multiple doctors and has undergone

numerous medical tests in an effort to treat this excruciating, ongoing back pain.

39.     Ms. Cardona was prescribed steroids in or about early 2016 to manage the pain, but this medication did not effectively prevent painful flare ups where every move felt excruciating.

40.     Ms. Cardona's doctors instructed her to limit walking and not to lift anything when she was experiencing acute back pain.

### Ms. Cardona Informs Defendant Wilson and Defendant McGlashan of Her Disability and She Is Provided with Reasonable Accommodations

41.     Ms. Cardona discussed her back pain with Defendant Wilson (the President of Defendant Prestige Management) and Defendant McGlashan (the General Manager of Defendant Prestige Management and her direct supervisor) on numerous occasions.

42.     Both Defendant Wilson and Defendant McGlashan were sympathetic to Ms. Cardona and encouraged her to ask for reasonable accommodations as needed, such as not doing work that involved walking or lifting when she was in the throes of a flare-up.

43.     Further, Defendant Wilson discussed treatments with Ms. Cardona and encouraged her to try acupuncture to treat the back pain.

### Ms. Cardona's Disability Is Accommodated at Defendant Prestige Management's Manhattan's Office

44.     Most of Ms. Cardona's duties at Defendant Prestige Management's involved seated desk work, but sometimes she was required to walk to the properties she managed in order to collect various forms, signatures, and other information.

45.     Sometimes Ms. Cardona's back pain was so severe that she could not lift heavy files or even walk to a file cabinet or get supplies without suffering.

46.     While working in Defendant Prestige Management's Manhattan office, Ms.

Cardona asked for and received reasonable accommodations when she experienced flare ups of her back condition. This included having other Defendant Prestige Management employees help her with aspects of the job that involved walking or lifting.

### *Ms. Cardona Is Transferred to Defendant*
### *Prestige Management's Bronx Office and Meets Defendant Cade*

47.     After thirteen years working in Defendant Prestige Management's Manhattan office, Ms. Cardona was transferred to the Bronx location in or about July 2016. She continued to work as a Tax Credit Recertification Specialist, receiving the same pay and benefits. At the Bronx office, she was reassigned to manage LIHTC for a number of residential properties in the Bronx.

48.     Upon her arrival in Defendant Prestige Management's Bronx office, Ms. Cardona met the Senior Property Manager, Defendant Cade.  Ms. Cardona soon learned that Defendants expected her to train Defendant Cade, who had no prior experience working with low-income tax credits. Although Defendant Prestige Management sent Defendant Cade to a class to train in Compliance, Defendant McGlashan instructed Defendant Cade to "take tips" from Ms. Cardona.

49.     Ms. Cardona was unclear about the reporting lines in her new office so she asked Defendant McGlashan whether Defendant Cade was Ms. Cardona's supervisor.  Defendant McGlashan told Ms. Cardona, "Cade is in charge of the properties, but I am still your boss."

50.     Ms. Cardona hoped to build a positive working relationship with Defendant Cade.

### *Ms. Cardona Keeps to Herself Even as She Observes*
### *Defendant Cade's Behavior Turn Rageful and Unprofessional*

51.     Not long after Ms. Cardona began working in Defendant Prestige Management's

9

Bronx office, she was shocked to observe Defendant Cade engage in rageful, abusive, and unprofessional behavior toward Defendant Prestige Management's employees. Defendant Cade constantly screamed at and aggressively argued with Ms. Cardona's coworkers. Further, she went on long tirades in front of the entire office during which she disparaged and belittled the people she supervised.

52.     Although Defendant Cade's behavior was not initially directed at Ms. Cardona, witnessing other employees be abused made Ms. Cardona feel extremely uncomfortable.

53.     In or about August 2016, Defendant McGlashan contacted Ms. Cardona to ask how things were going in the Bronx Office. Ms. Cardona reported that she was doing well. However, she also reported that Defendant Cade was verbally abusing the employees.

54.     Ms. Cardona was surprised to learn from Defendant McGlashan that other employees had reported the abusive behavior already and that Defendant Cade had been warned "to clean up her act."

55.     Defendant McGlashan expressed dismay upon hearing that the abusive conduct had persisted and promised to speak to Defendant Cade again.

### *Defendant Cade Forces Ms. Cardona to "Move" Her Files,*
### *Even Though Ms. Cardona Explained That Her*
### *Debilitating Back Pain Prevented Her From Walking and Lifting*

56.     In or about July 2017, Defendant Cade asked Ms. Cardona to review the files of all the affordable housing units Ms. Cardona managed to ensure that proper LIHTC compliance had been performed the previous year. These files were physically maintained in the office, rather than digitally. Ms. Cardona managed hundreds of units, so this required her to pull numerous files for review.

57.     The files that Ms. Cardona needed to review were normally housed in filing

10

cabinets located in a courtyard, some distance from her desk. Due to Ms. Cardona's ongoing

back pain, during the file review process Ms. Cardona kept files she was actively working on

at her desk, so she did not have to carry heavy files.

58.     In or about July 13, 2017, Defendant Cade told Ms. Cardona that the "office

looked messy" and Ms. Cardona would need to remove the files from her desk. Defendant

Cade instructed her to move the files back to the file cabinets.

59.     Ms. Cardona explained to Defendant Cade that she was currently working on

the files.  She explained that, due to her back pain, she was unable to walk back and forth to

the filing cabinets every time she needed a file that she was currently working on.

60.     Maintaining the files were on her desk was a necessary reasonable

accommodation due to Ms. Cardona's back issues.

61.     Further, she was unable to lift all the files that were on the desk in order to

bring them back to the filing cabinet.

62.     Since Ms. Cardona simply was not physically able to carry the files back and

forth, she asked Defendant Cade to allow her to keep the files on her desk while she was

using them.

63.     Ms. Cardona promised that the files would be moved from her desk as soon

as she was finished working with them.

64.     Defendant Cade dismissed Charging Party's request, saying, "[Defendant]

McGlashan said it was messy" in the office.

65.     Ms. Cardona responded that Defendant McGlashan was aware of Charging

Party's back pain and had allowed her reasonable accommodations in the past.

11

66.     Ms. Cardona also pointed out that Defendant McGlashan had always allowed employees in the Manhattan office to keep files on their desk "when they are in the middle of working on them."

67.     Defendant Cade ignored Ms. Cardona, demanded that she "clean" her office, and forced Ms. Cardona to move the files.

68.     Ms. Cardona was very anxious after this conversation. She worried that if she did not move the files, Defendant Cade would say she was being insubordinate and there would be repercussions. However, due to her back pain, she physically could not lift the files to return them to the filing cabinets.

69.     Ms. Cardona told one of her coworkers that Defendant Cade ordered her to move the files but she was not capable of completing this on her own. Luckily, the coworker kindly volunteered to carry them for her.

### Ms. Cardona Discovers that Her Predecessor Failed to Complete Important Documents and Alerts Defendant Cade

70.     On or about July 17, 2017 Ms. Cardona was experiencing very severe back pain that limited her ability to walk. She went to work, but spent the majority of the day completing the file review work while seated at her desk.

71.     Ms. Cardona's coworker, seeing that she was in pain, brought her the files she needed since she was physically unable to get them herself.

72.     While performing a file review, Ms. Cardona was shocked to discover that the person who had the Specialist role before her had failed to complete the legally mandated income certification forms. These forms are required to prove to the government that the property is compliant with LIHTC regulations and ensure that the tenants can remain in their

homes.

73.     The deadline to submit these forms was quickly approaching, so Ms. Cardona immediately made Defendant Cade aware of the discrepancy in the files.

### *Defendant Cade Spitefully Refuses to Assist*
### *Ms. Cardona, Even Though She Knew Ms. Cardona Was in Pain*

74.     Defendant Cade ordered Ms. Cardona to get the forms filled out that day. This would involve bringing a large pile of documents to the apartment building and walking through the property with them, knocking on all the tenants' doors.

75.     As Ms. Cardona was experiencing a very intense flare up of her back pain and was unable to perform the physical task, she asked Defendant Cade for assistance, a reasonable accommodation.  Ms. Cardona knew that Defendant Cade was the Senior Property Manager of the particular property and was already going there that same day.  Ms. Cardona asked Defendant Cade to bring the tenant forms to the building and have the tenants sign them.  Ms. Cardona explained that the physical exertion of carrying the forms and walking up and down the building hallways was impossible given how much pain Ms. Cardona was experiencing.

76.     In Defendant Prestige Management's Manhattan office, Ms. Cardona had never been forced to perform physical labor when she was suffering intense back pain. Therefore, she was shocked when Defendant Cade refused to accommodate Plaintiff or engage in an interactive dialogue with her, and instead told her in a condescending tone, "I am going to the building, but I'm not taking your files. You better figure out how you are gonna do that."

77.     Upon information and belief, Defendant Cade knew that Ms. Cardona was incapable of doing so because of her disability.

78.     Ms. Cardona was, again, very anxious and confused about what to do. She was afraid that she would get in trouble for appearing insubordinate, but she simply wasn't physically

capable of doing what Defendant Cade asked.

79.     Ultimately, fearing Defendant Cade, Ms. Cardona called the Superintendent of the property and asked him to help her get the tenant signatures. The Superintendent agreed and came to the office to get the forms from Ms. Cardona that same day.

### Defendant Cade Again Orders Ms. Cardona to Perform Physical Labor, Even Though She Is Clearly Suffering Extreme Pain

80.     The following day, on or about July 18, 2017, Ms. Cardona's back pain had worsened.  She was in so much pain that she hoped to go home early because she could not even sit in her chair.  However, she needed to wait until the Superintendent delivered the tenant forms.

81.     At approximately 11:00 AM that day, Ms. Cardona received a call from the property's Superintendent informing her that he had all the forms signed. The Superintendent offered to give them to Defendant Cade because she was currently in the building and was headed back to the office.

82.     Upon information and belief, when the Superintendent attempted to give the forms to Defendant Cade while she was visiting the property, she refused to take the forms from the Superintendent even though she was going back to the office.

83.     The Superintendent was unable to get to Defendant Prestige Management's office until later that afternoon, so Ms. Cardona could not leave early.

84.     Not long before 5pm, when Defendant Prestige Management's Bronx office closes for the day, the Superintendent finally returned the tenant forms to Ms. Cardona.

85.     Ms. Cardona was dismayed to realize that the forms had not been signed by all adults in the household, as required. The forms would have to be re-submitted to the tenants for the additional signatures.

86.     Ms. Cardona immediately called and emailed Defendant Cade to let her know

that the forms had not been filled out properly.

87.     Ms. Cardona was frustrated because the error would have been noticed much earlier in the day if Defendant Cade had been willing to simply bring the forms back from the property.

88.     Defendant Cade marched up to Ms. Cardona's desk and ordered her to go to the property immediately to collect the additional signatures right away.

89.     Ms. Cardona explained to Defendant Cade that she was in too much pain to go to the property with the forms, knock on numerous tenant doors, and then bring the forms back to the office. She pointed out that she had actually needed to go home hours several earlier due to the level of pain she was suffering and reminded her that she had been forced to stay in the office to get the signed forms from the Superintendent.

90.     Ms. Cardona also reminded Defendant Cade that Defendant Prestige Management had 30 days to correct the forms if they were submitted to Housing Preservation and Development (hereinafter "HPD") in their current state. Submitting incomplete forms to HPD was certainly not Ms. Cardona's usual practice, but under these circumstances she did not see that they had any other options.

91.     Defendant Cade became enraged and threatened Ms. Cardona, saying she was going to tell Defendant McGlashan and that Ms. Cardona would be fired for insubordination.

92.     Right after Defendant Cade threatened her, Ms. Cardona received an email from Defendant McGlashan that said, "Get it done."

93.     Defendants denied Ms. Cardona a reasonable accommodation and failed to engage in an interactive dialogue or process with Ms. Cardona about whether there was an accommodation that would assist her.

94.     Ms. Cardona was simply physically unable to get the forms signed that evening. She was in far too much pain to walk to the property, knock on doors throughout the building, and collect the signatures.

95.     She went home and resolved to speak to Defendant McGlashan the next day. Ms. Cardona felt confident that Defendant McGlashan would understand that this was not insubordination, but rather a reasonable request for accommodation of her medical condition.

### Defendants Suspend Ms. Cardona for Three Days for Insubordination

96.     The next day, on or about July 19, 2017, Defendant Cade shockingly called Ms. Cardona into the office and told her she was being suspended for three days.  She gave Ms. Cardona a memo saying not to come to work until the following Monday.  Upon information and belief, Defendants suspended Ms. Cardona because of her disability and requests for a reasonable accommodation.

### Ms. Cardona Is Called into a Meeting with Defendant Prestige Management's Senior Management and They Berate Her

97.     On the following Monday, on or about July 24, 2017, Ms. Cardona returned to work.

98.     When she arrived, she went to her desk and began performing her normal responsibilities. She was still experiencing severe back pain but was able to complete tasks that could be completed sitting at her desk.

99.     Soon after Ms. Cardona sat down, Defendant Cade approached her and said, "I need your keys to the office."  This request made Ms. Cardona fear that she was going to lose her job, so she asked Defendant Cade directly if she was being fired. Defendant Cade said, "No," but told Ms. Cardona she had to go to Defendant Prestige Management's main office at 3 pm.

100.     When Ms. Cardona went to Defendant Prestige Management's main office she

was called into a meeting with Defendant Henry, the Vice President of Defendant Prestige Management, and Defendant Wilson, the President of Defendant Prestige Management.  She was stunned when the men began the meeting by belittling her physical condition, asking "What's wrong with you?" and "Why are you walking funny?"

101.    Ms. Cardona reminded Defendant Wilson said she had extreme pain in her back, that they had discussed her condition on previous occasions.

102.    Defendant Wilson then ordered Ms. Cardona to sit down and tell them what happened with Defendant Cade.

103.    Ms. Cardona told them that she was being forced to do work that she was physically unable to perform because of her back condition. Further, she described how she asked Defendant Cade to accommodate her back condition and Defendant Cade not only refused, but did so in a condescending and rude way.

104.    Ms. Cardona then asked why she had been suspended simply for being in too much pain to perform physical labor.

105.    Ms. Cardona explained that she was being punished just for needing assistance with a documented medical condition. She said she did not understand why Defendant Cade was unwilling to help her.

106.    At this point, Defendant Henry and Defendant Wilson began yelling at Ms. Cardona. They said that she had no right to tell Defendant Cade what to do.

107.    Ms. Cardona tried to defend herself by saying said that she didn't tell anyone what to do, she merely asked for assistance. She said had never punished her for asking other managers at Defendant Prestige Management for assistance with her back pain in the past.

108.    Defendant Wilson then accused her of being lazy, saying, "Why couldn't you get

17

it done on the weekend?"

109.     Ms. Cardona explained that she continued to be in extreme pain over the weekend and was still physically unable to bring the forms to the tenants.

110.     Strangely, Defendant Henry asked if Ms. Cardona "got a call" from another management company where her friend and former Defendant Prestige Management co-worker had recently begun working.  He insinuated that she was planning to leave Defendant Prestige Management and work for the competitor.  Ms. Cardona denied this.

111.     Defendant Wilson then blamed Ms. Cardona for having a disability by demanding that she tell him, "What could you do differently next time to make sure this doesn't happen again?"

112.     Ms. Cardona responded that, as long as she continued to suffer extreme back pain, she was not physically able to do tasks that involved walking for long periods or lifting. She told them that she had recently been prescribed physical therapy and hoped it would improve her condition. However, until her back pain improved she would continue to need assistance with the parts of the job that required physical labor.

113.     Defendant Henry and Defendant Wilson looked at each other knowingly after Ms. Cardona said this. Defendant Wilson said, "This is going to hurt us as much as it's going to hurt you, but we are going to send you home and you will stay there until you think of what you would do differently." They told Ms. Cardona that when she could tell them what she would do differently, she could give them a call.

114.     Ms. Cardona, frustrated, responded, "There's no need because I already answered your question."

115.     Again, Defendants denied Ms. Cardona a reasonable accommodation

and failed to engage in an interactive dialogue or process with Ms. Cardona about whether there was an accommodation that would assist her because of her disability.

### Defendant Henry Accuses Ms. Cardona of Being a "Psycho"

116.    Defendant Henry then bizarrely asked Ms. Cardona if her problem was "psychotic" and, "Don't you think you have a mental issue?" because she was acting like a "psycho." He told her again to go home and think about it, and give them a call when she was ready to tell them what she could do differently.

### Ms. Cardona Is Constructively Terminated

117.    Ms. Cardona began to cry and said, "If this is what you think of me, I have no choice but to resign."  She left the office and did not return to work.

118.    Ms. Cardona was hurt and humiliated by the way she had been treated by Defendant Henry and Defendant Wilson. She did not understand how they could be so cruel when she was merely asking for help due to her physical condition. She was extremely hurt that they would call her sanity into question because she suffered a physical ailment.

### Failure to Provide Notice of Continuation of Coverage Rights under COBRA & Failure to Provide Notice of Termination and Date Employee Benefits Would Be Terminated

119.    Throughout her employment with Defendant Prestige Management, upon information and belief, Ms. Cardona was enrolled in an employer-sponsored health benefit plan.

120.    Upon her constructive termination, Ms. Cardona was eligible to elect continuation of medical coverage under COBRA.

121.    After she was unlawfully terminated, Defendant Prestige Management failed to inform Ms. Cardona of her right to continue health insurance as required under COBRA.

122.    As a result of Defendant Prestige Management's failure to provide Ms. Cardona

19

with the requisite election of coverage notice under COBRA, Ms. Cardona incurred medical expenses, among other things.

123.    Ms. Cardona is entitled to the statutory penalty under COBRA for failure to receive the required notice of her right to continuation of coverage, as well as other damages or relief that are just and proper.

124.    Furthermore, within five days of her constructive termination, under New York Labor Law, Ms. Cardona was entitled to receive written notice from Defendants stating the date of her termination and the date her employee benefits would be terminated.

125.    Defendants failed to give Ms. Cardona such notice under New York Labor Law, which negatively impacted her and caused her damages, including, without limitation, leaving her uninsured without notice, incurring medical expenses, and impacting and limiting her ability to secure alternative insurance coverage.

126.    Even after Ms. Cardona contacted Defendants in late September 2017 and again in early-mid October 2017, informing them that she required proof from Defendant Prestige Management that she was no longer covered by its health plan and no longer employed since July 24, 2017, Defendants still failed provide her with the requisite notice under New York Labor Law.

127.    Because of Defendants' unlawful actions, Ms. Cardona's insurance was interrupted and ultimately she was prevented from going to physical therapy.  This lapse in treatment caused Ms. Cardona severe, unnecessary physical suffering and other damages. Further, Ms. Cardona and were forced to pay for essential medical care out of pocket, causing them significant financial hardship.

### *Defendants Rescind Ms. Cardona's Insurance,*
### *Even Though Insurance Premium Was Deducted from Her Pay*

128.     Months after Ms. Cardona was constructively terminated, Defendant Prestige Management's health insurance provider informed Ms. Cardona that her coverage had ended effective July 1, 2017, even though Ms. Cardona worked for Defendants through July 24, 2017 and they deducted money from her paycheck towards her medical insurance in July 2017.

129.     Upon information and belief, Defendants unlawfully kept the money they deducted from her paycheck for medical insurance in July 2017 even though they stopped her coverage (unbeknownst to Ms. Cardona) on or around July 1, 2017 without notifying her, resulting Ms. Cardona suffering damages.

130.     In early-mid October 2017, around that time Ms. Cardona learned that her insurance had been terminated by Defendants on July 1, 2017, she contacted Defendants and requested reimbursement for monies deducted from her paycheck for insurance, among other things, but her demand was ignored.

## CAUSES OF ACTION

### AS AND FOR THE FIRST CAUSE OF ACTION
*Hostile Work Environment Based on Disability in Violation of the ADA*
*As to Defendant Prestige Management*

131.     Ms. Cardona repeats and re-alleges each and every fact as set forth above, herein.

132.     Plaintiff is a disabled individual under the ADA and/or was perceived by Defendant Prestige Management as being disabled, and she is therefore a member of a protected class.

133.     Ms. Cardona was qualified to work as Tax Credit Recertification Specialist for Defendant and she satisfactorily performed the duties required by the position she held with Defendant.

21

134.    As set forth in detail above and herein, Defendant Prestige Management subjected Plaintiff to a hostile work environment on the basis of her disability.

135.    The discrimination Plaintiff suffered while employed with Defendant Prestige Management was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

136.    The discrimination that Plaintiff suffered while employed by Defendant Prestige Management severely affected the terms and conditions of her employment.

137.    As a direct and proximate result of Defendant Prestige Management's unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

138.    Defendant Prestige Management's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

139.    Accordingly, Defendant Prestige Management discriminated against Ms. Cardona by virtue of subjecting Plaintiff to a hostile work environment in violation of her statutory rights as guaranteed by the ADA.

## AS AND FOR THE SECOND CAUSE OF ACTION
*Disability Discrimination in Violation of the ADA*
*As to Defendant Prestige Management*

140.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

22

141.    The aforementioned facts and circumstances demonstrate that Defendant Prestige Management discriminated against Plaintiff because of her disability.

142.    Plaintiff is a disabled individual under the ADA and/or was perceived by Defendant Prestige Management as being disabled, and she is therefore a member of a protected class.

143.    Plaintiff was qualified to work as a Tax Credit Recertification Specialist for Defendant Prestige Management and she satisfactorily performed the duties required by the position she held with Defendant Prestige Management.

144.    As set forth in detail above and herein, Defendant Prestige Management discriminated against Plaintiff in the terms and conditions of her employment by treating Plaintiff less well than her similarly situated, non-disabled co-workers.

145.    Defendant Prestige Management subjected Plaintiff to adverse employment action because of her disability, including, but not limited, to her suspension and constructive discharge.

146.    As a direct and proximate result of Defendant Prestige Management's unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

147.    Defendant Prestige Management's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

148.     Accordingly, Defendant Prestige Management discriminated against Plaintiff because of her disability, in violation of her statutory rights as guaranteed by the ADA.

## AS AND FOR THE THIRD CAUSE OF ACTION
*Failure to Accommodate under the ADA*
*As to Defendant Prestige Management*

149.     Ms. Cardona repeats and realleges each and every fact as set forth above, herein.

150.     Plaintiff is a disabled individual under the ADA and/or was perceived by Defendant as being disabled, and she is therefore a member of a protected class

151.     Defendant Prestige Management was aware and on notice of Plaintiff's disability and the symptoms thereof.

152.     Plaintiff requested reasonable accommodations because of her disability, such as assistance with tasks that required physical labor.

153.     In response, Defendant Prestige Management refused Ms. Cardona's requests for a reasonable accommodation and refused to participate in any interactive discussion or process to determine if there was an accommodation that would assist Ms. Cardona address her disability in the workplace.

154.     Had Defendant Prestige Management provided her with a reasonable accommodation, Ms. Cardona could have performed the essential functions of her job.

155.     As a direct and proximate result of Defendant Prestige Management's unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation,

disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

156.    Defendant Prestige Management's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

157.    Accordingly, Defendant discriminated against Ms. Cardona by virtue of failing to accommodate her known disability and failing to engage in an interactive process in violation of the ADA.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
*Retaliation in Violation of the ADA*
*As to Defendant Prestige Management*

158.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

159.    As set forth in detail above, Defendant Prestige Management subjected Plaintiff to discrimination, a hostile work environment, and an atmosphere of adverse employment actions and decisions because of her actual and/or perceived disability in violation of Plaintiff's statutory and constitutional rights.

160.    Defendant Prestige Management was aware that Plaintiff opposed unlawful conduct and/or asserted her rights under the ADA, including but not limited to, her requests for a reasonable accommodation because of her disability.

161.    Defendant Prestige Management, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff asserting her rights under the ADA as someone with disability or perceived disability, and Plaintiff suffered materially adverse employment actions as a result.

162.     As a direct and proximate result of Defendant Prestige Management's unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

163.     Defendant Prestige Management's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

164.     Accordingly, Defendant Prestige Management retaliated against Plaintiff in violation of her statutory rights as guaranteed by the ADA.

<u>**AS AND FOR THE FIFTH CAUSE OF ACTION**</u>
*Hostile Work Environment Based on Disability in Violation of the NYSHRL*
*As to All Defendants*

165.     Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

166.     Plaintiff is a disabled individual under the NYSHRL and/or was perceived by Defendants as being disabled, and she is therefore a member of a protected class.

167.     Plaintiff was qualified to work as a Tax Credit Recertification Specialist for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

168.     As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of her disability.

169.    The discrimination Plaintiff suffered while employed with Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

170.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment.

171.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

172.    Accordingly, Defendants discriminated against Ms. Cardona by virtue of subjecting Plaintiff to a hostile work environment in violation of her statutory rights as guaranteed by the NYSHRL.

### AS AND FOR THE SIXTH CAUSE OF ACTION
*Disability Discrimination in Violation of the NYSHRL*
*As to All Defendants*

173.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

174.    The aforementioned facts and circumstances demonstrate that Defendants discriminated against Plaintiff because of her disability.

175.    Plaintiff is a disabled individual under the NYSHRL and/or was perceived by Defendants as being disabled, and she is therefore a member of a protected class.

176.    Plaintiff was qualified to work as a Tax Credit Recertification Specialist for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

177.    As set forth in detail above and herein, Defendants discriminated against Plaintiff in the terms and conditions of her employment by treating Plaintiff less well than her similarly situated, non-disabled coworkers.

178.    Defendants subjected Plaintiff to adverse employment action because of her disability, including, but not limited, to her suspension and constructive discharge.

179.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

180.    Accordingly, Defendants discriminated against Plaintiff because of her disability, in violation of her statutory rights as guaranteed by the NYSHRL.

**AS AND FOR THE SEVENTH CAUSE OF ACTION**
*Failure to Accommodate under NYSHRL*
*As to All Defendants*

181.    Plaintiff repeats and realleges each and every fact as set forth above, herein.

182.    Plaintiff is a disabled individual under the NYSHRL and/or was perceived by Defendants as being disabled, and she is therefore a member of a protected class.

183.    Defendants were aware and on notice of Plaintiff's disability and the symptoms thereof.

184.    Plaintiff requested reasonable accommodations because of her disability, such as assistance with tasks that required physical labor.

185.    In response, Defendants refused and failed to provide Ms. Cardona with a reasonable accommodation.  Had Defendants provided her with a reasonable accommodation, Ms. Cardona could have performed the essential functions of her job.

186.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

187.    Accordingly, Defendants discriminated against Ms. Cardona by virtue of failing to accommodate her known disability in violation of the NYSHRL.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
*Retaliation in Violation of the NYSHRL*
*As to All Defendants*

188.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

189.    As set forth in detail above, Defendants subjected Plaintiff to discrimination, a hostile work environment, and an atmosphere of adverse employment actions and decisions because of her actual and/or perceived disability in violation of Plaintiff's statutory and constitutional rights.

190.    Defendants were aware that Plaintiff opposed unlawful conduct and/or asserted her rights under the NYSHRL, including, but not limited to, her requests for a reasonable accommodation because of her disability.

191.     Defendants, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff asserting her rights under the NYSHRL as someone with disability or perceived disability, and Plaintiff suffered materially adverse employment actions as a result.

192.     As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

193.     Accordingly, Defendants retaliated against Plaintiff in violation of her statutory rights as guaranteed by the NYSHRL.

### AS AND FOR THE NINTH CAUSE OF ACTION
*Hostile Work Environment in Violation of the NYCHRL*
*As to All Defendants*

194.     Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

195.     Plaintiff is a disabled individual under the NYCHRL and/or was perceived by Defendants as being disabled, and she is therefore a member of a protected class.

196.     Plaintiff was qualified to work as a Tax Credit Recertification Specialist for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

197.     As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of her disability.

198.     Defendants treated Plaintiff less well than other of its employees because of her disability, and such conduct would be offensive to a reasonable person.

199.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

200.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

201.    Accordingly, Defendant discriminated against Ms. Cardona by virtue of subjecting Plaintiff to a hostile work environment in violation of her statutory rights as guaranteed by the NYCHRL.

## AS AND FOR THE TENTH CAUSE OF ACTION
*Disability Discrimination in Violation of the NYCHRL*
*As to All Defendants*

202.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

203.    The aforementioned facts and circumstances demonstrate that Defendants discriminated against Plaintiff because of her disability.

204.    Plaintiff is a disabled individual under the NYCHRL and/or was perceived by Defendant as being disabled, and she is therefore a member of a protected class.

205.    Plaintiff was qualified to work as a Tax Credit Recertification Specialist for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

206.    As set forth in detail above and herein, Defendants discriminated against Plaintiff in the terms and conditions of her employment by treating Plaintiff less well than her similarly situated, non-disabled coworkers.

207.    Defendants subjected Plaintiff to adverse employment action because of her disability, including, but not limited, to her suspension and constructive discharge.

208.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

209.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

210.    Accordingly, Defendants discriminated against Plaintiff because of her disability, in violation of her statutory rights as guaranteed by the NYCHRL.

### AS AND FOR THE ELEVENTH CAUSE OF ACTION
*Failure to Accommodate under the NYCHRL*
*As to All Defendants*

211.    Ms. Cardona repeats and realleges each and every fact as set forth above, herein.

212.    Plaintiff is a disabled individual under the NYCHRL and/or was perceived by Defendant as being disabled, and she is therefore a member of a protected class

213.    Defendants were aware and on notice of Plaintiff's disability and the symptoms thereof.

214.    Plaintiff requested reasonable accommodations because of her disability, such as assistance with tasks that required physical labor.

215.    In response, Defendants refused and failed to provide Ms. Cardona with a reasonable accommodation.  Had Defendants provided her with a reasonable accommodation, Ms. Cardona could have performed the essential functions of her job.

216.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

217.    Defendants conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

218.    Accordingly, Defendants discriminated against Ms. Cardona by virtue of failing to accommodate her known disability under NYCHRL.

### AS AND FOR THE TWELFTH CAUSE OF ACTION
*Retaliation in Violation of the NYCHRL*
*As to All Defendants*

219.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

220.    As set forth in detail above, Defendants subjected Plaintiff to discrimination, a hostile work environment, and an atmosphere of adverse employment actions and decisions because of her actual and/or perceived disability in violation of Plaintiff's statutory and constitutional rights.

221.    Defendants were aware that Plaintiff opposed unlawful conduct and/or asserted her rights under the NYCHRL, including, but not limited to, her requests for a reasonable accommodation because of her disability.

222.    Defendants, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff asserting her rights and/or opposing unlawful conduct under the NYCHRL, and Defendants' conduct is reasonably likely to deter an individual from engaging in such protected activity.

223.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage which has manifested in physical symptoms, severe anxiety about her future, harm to her physical well-being and health, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her personal and professional reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

224.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

225.    Accordingly, Defendants retaliated against Plaintiff in violation of her statutory rights as guaranteed by the NYCHRL.

**AS FOR THE THIRTEENTH CAUSE OF ACTION**
*Aiding and Abetting in Violation the NYSHRL and NYCHRL*
*As to All Individual Defendants*

226.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

227.     NYSHRL (section 296 (6) of N.Y. Exec. Law) and NYCHRL (section 8-107(6) of N.Y.C. Admin. Code) both prohibit any person to "aid, abet, incite, compel or coerce" any acts forbidden by NYSHRL or NYCHRL, "or to attempt to do so."

228.     Defendant Cade, Defendant McGlashan, Defendant Henry, and Defendant Wilson (the "Individual Defendants"), aided, abetted, incited, compelled, or coerced (or attempted to do so) Defendant Prestige Management's unlawful conduct (*e.g.*, hostile work environment, disability discrimination, failure to provide a reasonable accommodation, and retaliation) against Ms. Cardona by their conduct, action, inaction, in violation of NYSHRL and NYCHRL.

229.     The Individual Defendants were and are all senior level employees who controlled Ms. Cardona's workplace and employment conditions, and aided, abetted, incited, compelled, or coerced Defendant Prestige Management in performing unlawful acts that caused her harm, or attempted to do so.  Upon information and belief, the Individual Defendants were generally aware of their role as part of the unlawful activity that they assisted in, and they knowingly and substantially assisted Defendant Prestige Management in its violations of the NYSHRL and NYCHRL.

230.     As a direct and proximate result of Individual Defendants' conduct, Ms. Cardona has suffered and continues to suffer damages, including severe mental anguish and emotional distress.

231.     The Individual Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Cardona, entitling her to punitive damages.

## AS FOR THE FOURTEENTH CAUSE OF ACTION
*Failure to Notify of Right to Continuing Health Insurance Coverage under COBRA*
*As to Defendant Prestige Management*

232.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

233.    Upon information and belief, Defendant Prestige Management maintained and was the administrator and/or plan sponsor of the group health care plan ("Plan") subject to COBRA requirements.

234.    Defendant Prestige Management was required to notify Plaintiff that she was eligible to receive benefits under COBRA, including continuation coverage benefits.

235.    By failing to provide Plaintiff with notice and/or timely notice of her right her right to elect continuation coverage as required by law, Defendant Prestige Management violated COBRA, 29 U.S.C. §§ 1161 *et seq*.

236.    As a result of Defendant Prestige Management's violation of COBRA, Plaintiff was without medical coverage and incurred medical expenses, among other damages.

237.    Defendant Prestige Management is liable to Plaintiff for statutory penalties under 29 U.S.C. 1132(c) and 29 C.F.R. § 2575.502c-1, in the amount of $110.00 per day, as well as any other damages or relief the court deems proper.

## AS FOR FIFTEENTH CAUSE OF ACTION
*Failure to Notify Plaintiff of Cancellation of Coverage Under NYLL*
*As to All Defendants*

238.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

239.    Section 195(6) of New York Labor Law provides that an employer shall:

> notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination. In no case shall notice of such termination be provided more than five working days after the date of such termination. Failure to notify an employee of cancellation of accident or health insurance

subjects an employer to an additional penalty pursuant to section two hundred seventeen of this chapter.

240.     Within 5 working days of her Plaintiff's constructive discharge, Defendants failed to notify her in writing of the exact date of her termination and the exact date of cancellation of employee benefits connected with such termination.

241.     As a proximate result of Defendants' failure to provide the requisite notice under law, Plaintiff suffered damages, including, but not limited to, being without medical coverage and incurring medical expenses.

242.     As a result of Defendants' unlawful actions, Plaintiff is entitled to any relief permitted under law.

### AS FOR THE SIXTEENTH CAUSE OF ACTION
*Unjust Enrichment under New York Law*
*As to Defendant Prestige Management*

243.     Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

244.     Defendant Prestige Management deducted medical insurance premiums amounts from Ms. Cardona's pay in July 2017, even though Defendant Prestige Management terminated her medical insurance on or around July 1, 2017 without notifying her.

245.     Upon information and belief, Defendant Prestige Management benefitted from the monies it deducted from Ms. Cardona's pay at her expense as Ms. Cardona did not have insurance coverage in July 2017, or thereafter.

246.     By reason of the foregoing, Defendant Prestige Management has been unjustly enriched.

247.     Both equity and good conscience require that Plaintiff receive restitution from Defendant Prestige Management.

248.    Defendant Prestige Management is liable for damages caused to Plaintiff in the amount to be determined at trial.

## AS FOR SEVENTEENTH CAUSE OF ACTION
*Unlawful Wage Deductions in Violation of NYLL*
*As to All Defendants*

249.    Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

250.    Defendants knowingly, willfully, and intentionally violated N.Y. Labor Law § 193 when they deducted monies from Ms. Cardona's wages for her medical insurance coverage in July 2017, but then knowingly, willfully, and intentionally failed to provide her with the benefit of medical insurance coverage.

251.    As a consequence of the willful underpayment of wages, as alleged above, Ms. Cardona incurred damages, and Defendants are indebted to her in the amount of the unpaid wages and such other legal and equitable relief due to Defendants' unlawful and willful conduct, as the Court deems just and proper.

252.    Plaintiffs seek recovery of liquidated damages, interest, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, it is specifically requested that this Court grant Ms. Cardona judgment as follows:

A.    Awarding compensatory, statutory, liquidated, and any other damages or penalties, including punitive damages where permitted by law, on Ms. Cardona's claims, in an amount to be determined at trial but in any case, no less than $1,500,000 (ONE-POINT-FIVE MILLION DOLLARS);

B.    Awarding Ms. Cardona the costs and disbursements of this action, including reasonable attorneys' fees;

C.  Awarding Ms. Cardona any lawful interest, including, but limited to pre-judgment

interest; and

D.  Such other and further relief as this court deems equitable, proper, and just.

Dated:  New York, NY
        July 17, 2020                           Respectfully submitted,

                                                GODDARD LAW PLLC
                                                *Attorneys for Plaintiff Jo-Ann Cardona*

                                                By: _____/s/_____
                                                    Megan S. Goddard, Esq.

                                                39 Broadway, Suite 1540
                                                New York, NY 10006
                                                Office:  (212) 646 504-8361
                                                Fax:  (212) 473-8705
                                                Email:  megan@goddardlawnyc.com